## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

TIMOTHY C. WORDEN,

                 Plaintiff,

-against-

ONEIDA COUNTY, DEPUTY BRADY WOODS,
DEPUTY STEVEN EILERS, DEPUTY EDIN PATKOVIC,
DEPUTY LUKE CARPENTER, DEPUTY JESSE TUTHILL,
DEPUTY MICHAEL BAKER, DEPUTY DAQUAN HERVEY, and
UNIDENTIFIED ONEIDA COUNTY DEPUTY SHERIFFS.

                 Defendants.

**Complaint**
Jury Trial Demanded

6:25-cv-1234 (AJB/ML)

Plaintiff, TIMOTHY C. WORDEN by his attorneys, Zennamo Litigation & Advocacy, PLLC, complaining of the Defendants, respectfully sets forth and alleges as follows:

## I.   INTRODUCTION

1.     This is a civil action brought by the Plaintiff, Timothy C. Worden, resulting from the unconstitutional misconduct of Oneida County, via the Oneida County Sheriff's Department, its officers, servants, and employees as hereafter set forth.  Mr. Worden is a 58-year-old physically disabled man who was stopped by Oneida County Sheriff's deputies while riding his e-bike for a minor alleged infraction. Without lawful justification, the deputies tackled Mr. Worden, propelling him from his bike, slamming him face first to the ground, and knocking him unconscious.  Later, while in restraints and in the holding area of the Oneida County Jail, Defendants then subjected him to a physical attack in retaliation for his verbal objections to their initial misconduct regarding stop and his continued detention.  The Oneida County Sheriff's Department, its agents, employees and officers, intentionally and unlawfully detained, assaulted, arrested, and physically attacked the

1

Plaintiff as part of a concerted effort to silence his complaints concerning the impropriety of a traffic stop and his continued detention.   In short, the incident occurred around 9:28 PM on September 6, 2024, when Timothy C. Worden was wrongly stopped, detained, arrested, assaulted, injured, silenced and retaliated against in violation of the First and Fourth Amendments, various Penal Law and Common Law causes of action, and negligence.  Mr. Worden was then improperly arrested in retaliation in violation of the Fourth Amendment.

2.    Plaintiff suffered severe injuries, including a broken nose (in three places), a fractured tailbone, head trauma, aggravation of prior spinal and shoulder injuries, as well as ongoing emotional and psychological harm.  Damages also include, but are not limited to, injury to the face, head, neck, and nose which required medical intervention and surgery, depression, back and shoulder pain, a broken coccyx bone, emotional anguish, sleep problems, breathing problems, increased likelihood of stroke, concussion, brain injury, permanent increased risk of future head injury, the inability to finish and complete everyday tasks that could be completed prior to the illegal actions of the Defendants, attorney fees, and reputational damage.

3.    This action seeks damages against the Defendants for committing acts under color of law and depriving Plaintiff of rights secured under the laws and Constitution of the United States, and the laws and Constitution of the State of New York.  Plaintiff also brings parallel claims under the New York State Constitution, and asserts supplemental state law claims for assault, battery, false arrest, negligence (including the failure to render medical aid to an injured detainee), and negligent hiring, training, and supervision, as well as abuse of process. Additionally, because Plaintiff is a qualified individual with a disability, this Complaint includes claims under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act for the failure of Oneida County and its Sheriff's Department to accommodate his disabilities

during this law enforcement encounter, as well as related State causes of action.  Plaintiff brings this action for compensatory damages and punitive damages pursuant to 42 U.S.C. § 1983 and attorneys' fees pursuant to 42 U.S.C. § 1988 for violation of his civil rights, as said rights are secured by the laws and the Constitution of the State of New York and the United States.   Each Defendant is sued as a direct participant in the unlawful conduct or as an official responsible for the policies and practices that caused Plaintiff's injuries. Plaintiff seeks compensatory and punitive damages (except against municipal entities), attorneys' fees, and all other appropriate relief.

## II.    JURISDICTION AND VENUE

4.       This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, The Right Against Unlawful Searches and Seizures and use of unlawful force founded in the Fourth Amendment, The Right to Freedom of Speech founded in the First Amendment, the legal entitlement to be free from improper physical contact founded under New York Common Law, the legal entitlement to be free from abuse of process by governmental officials founded under New York Common Law, and the applications of said rights by way of the Fourteenth Amendment, the laws of the State of New York, the United States, and the New York State Constitution.  Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343(a)(3) and (4) because the claims arise out of the aforementioned constitutional, common law, and statutory provisions.  Plaintiff invokes the supplemental pendent jurisdiction of this Court to decide claims listed herein under State law. 28 USCA § 1367.

5.       The acts of misconduct alleged below were committed within the Northern District of New York.

6.       That at all times hereinafter referenced, and at the commencement of this action, Plaintiff was and still is a resident of the State of New York, County of Oneida.

7.      That at all times herein after mentioned, Defendant Oneida County is a municipal corporation within New York State.

8.      At all times relevant, Defendant Deputies were acting as state actors under color of law.

9.      Defendant Deputies were, at all times relevant, agents, servants and employees acting within the scope of their employment with the County of Oneida.


### III.    NOTICE OF CLAIM AND CONDITIONS PRECEDENT

10.     On December 3, 2024, a valid and timely notice of claim was served on the municipal Defendants captioned herein pursuant to General Municipal Law § 50-e.

11.     On or about March 4, 2025, Defendant Oneida County conducted a hearing pursuant to General Municipal Law § 50-h.

12.     At least thirty (30) days have elapsed since the service of the notice of claim mentioned above.

13.     To date, the County has not offered adjustment or payment of Plaintiff's claims, and thus Plaintiff now commences this action within the applicable time period under New York law.


### IV.    PARTIES

#### PLAINTIFF: TIMOTHY C. WORDEN

14.     Mr. Worden is a resident of Verona Beach, New York.  He is a 58-year-old husband and father who suffers from significant physical disabilities resulting from prior neck and back injuries.  At the time of the incident, Mr. Worden relied on an electric bicycle for mobility. He has limited range of motion and chronic pain, and is classified as a person with a disability.  At all

relevant times, Plaintiff was a civilian not engaged in any criminal conduct. He was unarmed, non-violent, and posed no immediate threat to the safety of the officers or the public.

## DEFENDANT: COUNTY OF ONEIDA (ONEIDA COUNTY OR THE COUNTY)

15.    Defendant Oneida County is a municipal entity organized under the laws of the State of New York. Oneida County operates and funds the Oneida County Sheriff's Department and is the employer of the individual Defendants. The County, through its policymakers (including the Sheriff and other final decision-makers), is responsible for establishing the policies, practices, and customs of the Sheriff's Department, including those governing traffic stops, use of force, arrests, detainee medical care, and supervision of officers. The County is sued for its own policies and customs that violated Plaintiff's rights as well as on a respondeat superior basis for the tortious acts of its employees committed within the scope of their employment.

## DEFENDANT: ONEIDA COUNTY SHERIFF'S DEPARTMENT

16.    The Oneida County Sheriff's Department ("OCSD") is a department of Oneida County and is the law enforcement agency that employs the individual deputy defendants. In this Complaint, references to actions by the "Sheriff's Department" or its deputies are intended to allege liability against the County of Oneida. To the extent the Sheriff's Department is a suable entity separate from the County, it is named as a Defendant. Otherwise, it is included for clarity as the organizational unit responsible for the deputies' actions.

## DEFENDANT: DEPUTY WOODS

17.     Upon information and belief, Defendant Woods was at all relevant times a Deputy Sheriff employed by the Oneida County Sheriff's Department. He is one of the officers who interacted with, arrested, and used force upon Mr. Worden on September 6, 2024. Mr. Worden specifically identifies Deputy Woods as the officer who assaulted him while in custody at the jail (including by slamming him into a wall and applying a neck restraint). Deputy Woods is sued in his individual capacity for acts and omissions taken under color of state law. At all relevant times, he was acting within the scope of his employment with Oneida County and OCSD.

### DEFENDANT: DEPUTY EILERS

18.     Upon information and belief, Defendant Eilers was at all relevant times a Deputy Sheriff employed by the Oneida County Sheriff's Department. Mr. Worden identifies Deputy Eilers as the officer who initiated the physical takedown at the roadside stop by grabbing or pulling Mr. Worden off his bicycle. Deputy Eilers is sued in his individual capacity for acts and omissions taken under color of state law, and was acting within the scope of his employment with the County at all relevant times.

### DEFENDANT: JOHN/JANE DOE AND OTHER DEPUTIES

19.     Defendants John Doe, and/or Jane Doe, and other Defendant deputies are unidentified Sheriff's Department personnel or employees identified as having been involved in the instant matter in some other regard, (deputies, supervisors, or other employees) and who participated in or witnessed the events described in this Complaint and failed to intervene or otherwise contributed to the violations of Plaintiff's rights. This includes, but is not limited to, any officers who were present at the initial stop or at the jail holding cell and did not stop the excessive

force, those who assisted in booking or detaining Mr. Worden, and any officers who later publicized Plaintiff's arrest photos or information. The identities of these Doe Defendants are currently unknown to Plaintiff. Plaintiff will seek to amend the Complaint to name these individuals once their identities are ascertained through discovery. Each Doe Defendant is sued in his or her individual capacity and was acting under color of state law and within the scope of employment at all relevant times.

## V.    STATEMENT OF FACTS

20.    At approximately 9:28 p.m. on September 6, 2024, Plaintiff Timothy Worden was riding his electric bike on a roadway in Oneida County, New York, when Defendants initiated a traffic stop.  Defendants claimed to have commenced the interaction because Plaintiff's e-bike lacked sufficient rear lighting in violation of Vehicle and Traffic Law Section 1236(a).

21.    Defendants utilized their emergency lights and Mr. Worden brought his e-bike to a halt in response. Multiple sheriff's deputies, including Defendants Eilers and Woods, confronted him.  Mr. Worden explained that the lights functioned appropriately, that his bag was in the way, and that he would just activate the light to comply.  Mr. Worden verbally questioned the deputies' actions, protested that he had done nothing wrong, and inquired why he was being harassed. Rather than calmly explain the reason for the stop or address Mr. Worden's concerns, the deputies reacted with hostility. One deputy derisively told Mr. Worden to "keep pushing the issue."  Mr. Worden responded with frustration at the officer's tone, at one point sarcastically referring to Deputy Woods as "superhero" and, in coarse terms, an "asshole," due to the perceived harassment.

22.     Although three officers surrounded Mr. Worden, he was not initially told he was not free to leave.  Uncomfortable with the unfolding events and believing he was no longer needed by the officers, the Plaintiff started to move away on his bike; however, concomitantly with his attempt to ride away, an officer grabbed him and threw him to the ground, stating a single time, "you are not free to leave."  When Defendants executed the takedown maneuver, Mr. Worden was thrown face first to the ground where his head and face were slammed into the pavement with such force that Mr. Worden lost consciousness. On impact, Plaintiff's forehead struck the asphalt, creating a deep gash across his forehead. Plaintiff's nose was also severely displaced by three separate nasal fractures causing immediate bleeding, swelling, and severe pain.

23.     Despite clear signs of serious injury to Mr. Worden's face and nose along with the likelihood of a concussion or cervical injury, the Defendant deputies continued to manhandle him, jostling, twisting, and wrenching his limp body as they roughly handcuffed him.

24.     At no point did any of the Defendant officers intervene or urge restraint in the face of the excessive force being used by their colleagues, but instead, stood by and failed to stop the unconstitutional conduct despite having the opportunity to do so.  Instead, deputy angrily responded 'Now he's going to get arrested for resisting and oga!'

25.     After Mr. Worden was handcuffed, Defendant deputies hauled him up from the ground. Mr. Worden, though injured, continued to protest against the injustice of what was happening. He questioned why he was being treated violently for no reason.

26.     Upon arrival at the Oneida County Jail, Mr. Worden was escorted inside by Defendants Woods, Eilers, and other deputies.  Inside a holding cell and booking area, Mr. Worden was directed to sit on a bench. One of his arms was handcuffed to a fixture, restraining him.  Despite Mr. Worden being secured and injured from the previous interaction, Defendant

Woods suddenly and violently attacked him. Deputy Woods ripped Mr. Worden's arm behind his back, stomped on his right foot, and in a swift and violent motion, slammed Mr. Worden into the concrete wall of the cell, causing a pop in the Plaintiff's neck and substantial pain in his spine. Because one of Mr. Worden's arms was still cuffed to the bench and his foot immobilized by Wood's, he could not break the momentum of his forward trajectory as he was slammed into the wall with the full force of Wood's knee driven into his lower spine forcing his pelvis into wall. This brutal maneuver fractured Mr. Worden's tailbone (coccyx) and inflicted further trauma to his spine and neck. Mr. Worden felt a sharp, deep pain in his lower back and a popping in his neck.

27.    As Mr. Worden remained pinned against the wall, Deputy Woods pressed his forearm against the side/back of Mr. Worden's neck.  Mr. Worden, who was already in shock from pain, was unable to breathe or speak for several seconds. He feared he was going to die. Eventually, Deputy Woods released the pressure. Throughout this ordeal, Mr. Worden was cuffed to a bench, physically injured, and concussed, despite posing a threat of violence of or flight. Upon information and belief, at least two or three other officers were present in the holding area during Woods's assault, and none of them intervened to stop or restrain Deputy Woods despite the obvious excessiveness of his actions.

28.    Throughout the encounter, the Defendant deputies were made aware by Mr. Worden that he had physical disabilities and prior injuries. He explicitly told them about his back and neck issues, that he was permanently disabled, and the same was documented by the Defendants.  Despite Plaintiff's documented disabilities, the Defendants used greater force than necessary to ticket, detain, arrest, and subdue Mr. Worden.  This conduct violated basic standards for police interactions with individuals with disabilities reasonable accommodations which take into account an individual's physical limitations when engaging in County related activities,

9

including law enforcement.

29.     After the violent incident in the holding cell, Mr. Worden was in severe pain in the neck, back, and shoulder area and was complaining of intense back pain and an inability to sit or stand comfortably due to the tailbone injury. Despite this, the Defendant deputies did not immediately summon medical assistance. Mr. Worden was placed alone in the cell and restrained for an extended period.  The jail staff and Defendant deputies had a duty to provide medical evaluation for an Plaintiff after inflicting injury, but they failed to do so promptly. This delay in medical care exacerbated Mr. Worden's suffering and posed a serious risk to his health.

30.     In the days and weeks following the incident, Mr. Worden required extensive follow-up care. He underwent surgery to repair his broken nose, which had been fractured in three places; he had to seek treatment for ongoing back and tailbone pain; and he was prescribed pain management and had to use special cushions when sitting as a result of the coccyx fracture. The slamming of Mr. Worden to the ground and against the wall introduced new severe pain on the left side that had not existed before. Mr. Worden also experienced persistent neck pain, headaches, and numbness in his limbs, which were constituted a result of new injuries and aggravations of his preexisting spinal issues. He followed up with orthopedic specialists and neurologist for these conditions. Additionally, the emotional and psychological toll was significant: Mr. Worden developed symptoms of declining mental health, including nightmares, anxiety attacks, and depression. He has had trouble sleeping due to pain and trauma, has become socially withdrawn out of embarrassment and fear, and his relationships with his family have been strained. These damages are ongoing.

31.     As if the physical and mental injuries were not enough, Defendants further harmed Mr. Worden by publicly disseminating information about his arrest in a humiliating manner yet

never reporting that all allegations against him were dismissed. Defendants took Mr. Worden's booking photograph and posted it on Facebook along with details of his arrest, making light of the situation and inviting negative comments. Friends, acquaintances, and strangers saw the post and many assumed Mr. Worden must have been doing something terrible to look so injured in the mugshot when in fact those injuries were the result of the Defendants' unlawful assault. Mr. Worden's reputation suffered, and he felt deep shame and humiliation. This conduct by Defendants was entirely unnecessary and served no legitimate purpose other than to further punish and embarrass Mr. Worden.

32.     Moreover, Plaintiff was charged by Defendants with the following: Obstruction of Governmental Administration in Violation of the Penal Law Section 195.05; Refusal to Take a Breath Test in violation of Vehicle and Traffic Law Section 1194(1)(b); Driving While Intoxicated in violation of Vehicle and Traffic Law § 1192(3); Failure to Comply with a Lawful Order in violation of Vehicle and Traffic Law Section 1102; No Bell or Signal Device on Bicycle in violation of Vehicle and Traffic Law 1236(b); and No or Inadequate Lights on a Bicycle, in violation of Vehicle and Traffic Law Section 1236(a). Allegations of 1192(3) are inapplicable to electric bikes and come with severe civil penalties; likewise, Refusal to Submit to a Breath Test prompts severe civil penalties and is not applicable to operation of electric bikes. Eventually all of the allegations against Plaintiff were dismissed for the Government's abandonment of the charges and no civil penalties were imposed; however, Plaintiff incurred substantial legal fees and reputational damage as a result of the allegations, in addition to the hardship caused by the stress and aggravation that resulted while the allegations proceeded through the court.

33.     The incident described was not an isolated misjudgment by individual rogue officers but rather reflected broader failures in the Oneida County Sheriff's Department's training,

supervision, and policies.  On information and belief, prior to September 6, 2024, the OCSD had

no adequate policy or training specifically instructing deputies on how to engage with individuals

who have disabilities during stops and arrests despite the foreseeable need for such guidance to

avoid exactly the type of harm that occurred to Mr. Worden.  The County and Sheriff's

Department also maintained unlawful customs or practices, such as tolerating or encouraging

officers to use disproportionate force for minor offenses, failing to discipline officers who

retaliated against citizens for speech, and not requiring intervention by bystander officers.  Policies

on de-escalation were either nonexistent or ignored. The failure to have proper protocols for

detainee medical care at the jail, and the fact that officers felt free to mock and post about arrestees

on social media, all point to a culture of indifference to civilians' rights at the OCSD. These

systemic issues were moving forces behind the violations of Mr. Worden's rights.

34.    As a direct result of Defendants' actions, Plaintiff Timothy Worden suffered the

following injuries and damages: (a) Physical injuries**:** including a broken nose (requiring surgery),

a fractured coccyx (tailbone), head laceration (scar on forehead), neck and spinal injuries (with

nerve impingement and chronic pain), contusions and abrasions, and aggravated preexisting back

and neck conditions (causing new symptoms on the left side as opposed to prior right-side issues);

(b) Pain and suffering: ongoing severe pain in the lower back and tailbone area, headaches, and

discomfort especially when sitting or sleeping; (c) Emotional distress: such as anxiety, depression,

insomnia, nightmares, flashbacks of the assault, and fear of police; (d) Loss of enjoyment of life:

Mr. Worden has curtailed his previously personal enjoyments like woodworking and now avoids

going out alone or at night, for fear  of retaliation; (e) Reputational harm: as noted, being publicly

portrayed as an arrestee (via Facebook and otherwise) has damaged his standing in the community

and caused him great humiliation; (f) Economic damages: including medical expenses (hospital

bills, surgery costs, medications, therapy, follow-up visits), costs of medical equipment or supplies (e.g., special cushions, braces), and legal fees incurred in defense of the baseless charges and in seeking redress; and (g) Other damages: such as possible lost income or opportunities due to the injuries, and attorneys' fees and litigation costs in bringing this action. Plaintiff also seeks punitive damages against the individual Defendants to punish and deter the kind of egregious misconduct described, as their actions were willful, wanton, and in reckless disregard of Mr. Worden's rights.

35.     All of the foregoing conduct by Defendants was undertaken under color of state law and within the scope of their employment as law enforcement officers or officials. At all relevant times, Defendants were acting in the course of their duties as deputies of the Oneida County Sheriff's Department, and their acts (and omissions) were done in furtherance of the business of the County of Oneida. The County of Oneida (and its Sheriff's Department) therefore bears vicarious liability under state law for the torts of the individual Defendants, and municipal liability under 42 U.S.C. § 1983 for the violations of federal rights caused by its policies, practices, and customs, as described herein.

## VI.    FIRST CAUSE OF ACTION:  VIOLATIONS OF PLAINTIFF'S RIGHTS VIA ILLEGAL SEIZURE AND DETENTION (42 U.S.C. §1983 AND THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION)

36.     Plaintiff repeats and realleges the assertions stated above as though fully stated herein.

37.     By the actions described above, Defendants deprived Plaintiff of his rights secured by the Constitution and laws of the United States in violation of 42 U.S.C. §1983, and the Fourth Amendment as made applicable to the states via the Fourteenth Amendment, including, but not limited to, the right to be free from the unreasonable searches and seizures when Defendants

forcibly and unlawfully threw Plaintiff from his e-bike in which he was traveling without indication as to why and without a warrant or probable cause.  Although Plaintiff is accused of failing to comply with a taillight related Vehicle and traffic Law violation, the Defendants were not permitted to use escalated force to detain the Plaintiff on said allegations, nor a Vehicle and Traffic Law 1236 violation an arrestable offense.

38.    As such, Defendants seized and detained Plaintiff in violation of the Fourth Amendment of the United States Constitution.

39.    Because of the unlawful seizure by Defendants, Plaintiff sustained serious and grievous injuries and was deprived of his constitutional rights. Plaintiff was harmed physically, suffering trauma to his head, neck, shoulders, face, and nose (including a broken nose with lasting disfigurement); scarring and lacerations to his forehead and face; a broken tailbone and aggravated spinal injuries; loss of range of motion in his neck, back, and limbs; and neurological symptoms such as numbness, stiffness, and pain in his neck, back, arms, and legs, as well as mental and emotional injuries. Plaintiff suffered and continues to suffer severe emotional distress, pain and suffering, and humiliation from being publicly brutalized, including symptoms of post-traumatic stress, anxiety, nightmares, and fear, among other injuries.

40.    Because of the aforesaid, Plaintiff has been damaged and he is entitled to compensatory damages in a sum to be determined at trial, punitive damages and attorneys' fees pursuant to 42 U.S.C. §1988.

## VII.    SECOND CAUSE OF ACTION:  VIOLATION OF PLAINTIFF'S RIGHT VIA USE OF EXCESSIVE AND UNREASONABLE FORCE (42 U.S.C. §1983 AND THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION)

41.    Plaintiff repeats and realleges the assertions above as though fully stated herein.

42.    By the actions described above, Defendants deprived Plaintiff of his rights secured by the Constitution and laws of the United States in violation of 42 U.S.C. §1983, and the Fourth Amendment as made applicable to the states via the Fourteenth Amendment, including, but not limited to, the right to be free from the use of excessive and unreasonable force when the Defendants gratuitously tackled, assaulted, and battered, Plaintiff during a traffic stop related bike light insufficiency claim.  Furthermore, while Plaintiff was fastened to a bench with handcuffs and secured within a locked area of the Oneida County Sheriff's Department/Oneida County Jail, Defendants violently stomped on Plaintiff's foot, ripped his arm behind his back, drove a knee into his lower pelvis area, slammed his face and torso into a wall, and cut off his breathing, causing a broken coccyx bone and a popping in the neck that resulted in spinal related damage and left side permanent damage and aggravation of older right side disabilities.

43.    The excessive force which Plaintiff was subjected to was affected by Defendants without authority of law and without any reasonable necessity to use the excessive and unreasonable force employed against him, as the force employed was used without legal justification, without Plaintiff's consent, with malice and with an intent to inflict pain, suffering and humiliation.

44.    Defendants who witnessed the use of excessive force and failed to exercise their affirmative duty to intervene, when there was a reasonable opportunity to do so, are liable to the Plaintiff along with those officers who directly participated in the use of excessive and unreasonable force.

45.    As a direct result of Defendants' actions, Plaintiff was deprived of rights, privileges and immunities under the Fourth Amendment of the United States Constitution, being more particularly Plaintiff's right to be free from the use of excessive and unreasonable force.

46.    Because of the unlawful seizure by Defendants, Plaintiff sustained serious and grievous injuries and was deprived of his constitutional rights. Plaintiff was harmed physically, suffering trauma to his head, neck, shoulders, face, and nose (including a broken nose with lasting disfigurement); scarring and lacerations to his forehead and face; a broken tailbone and aggravated spinal injuries; loss of range of motion in his neck, back, and limbs; and neurological symptoms such as numbness, stiffness, and pain in his neck, back, arms, and legs, as well as mental and emotional injuries. Plaintiff suffered and continues to suffer severe emotional distress, pain and suffering, and humiliation from being publicly brutalized, including symptoms of post-traumatic stress, anxiety, nightmares, and fear, among other injuries.

47.    Because of the aforesaid, Plaintiff has been damaged and he is entitled to compensatory damages in a sum to be determined at trial, punitive damages and attorneys' fees pursuant to 42 U.S.C. §1988.

## VIII.    THIRD CAUSE OF ACTION:  FALSE ARREST AND IMPRISONMENT (NEW YORK COMMON LAW)

48.    Plaintiff repeats and realleges each and every preceding paragraph as if fully set forth herein.

49.    The Defendants intentionally and unlawfully confined and restrained Plaintiff against his will, constituting false arrest and false imprisonment under New York law. Beginning on the night of the incident and continuing through Plaintiff's detention at the Sheriff's station and

holding cell, Defendants, acting in concert, caused Plaintiff to be arrested, handcuffed, and held in custody without Plaintiff's consent and without legal justification.

50.    At no time did Defendants have probable cause or any warrant to arrest Plaintiff for a crime.

51.    Plaintiff had committed no criminal offense that would justify the initial arrest or subsequent detention.  The pretext of a minor bicycle tail-light traffic infraction did not warrant an arrest, and any claim by Defendants that Plaintiff resisted or obstructed lawful police conduct was concocted to excuse their illegal use of force.  Accordingly, one or more Defendants explicitly indicated the improper motive for the arrest: a deputy warned Plaintiff to "keep pushing the issue" in reference to Plaintiff's objections to their conduct, and after assaulting him a deputy declared, 'Now he is going to get arrested.'

52.    Plaintiff was conscious of his confinement and never consented to being arrested or detained. He verbally objected to the unlawful detention, but Defendants nonetheless kept him handcuffed, physically restrained, and locked in a cell for an appreciable period of time. Such confinement was carried out willfully by Defendants, who knew or should have known that they lacked lawful authority to do so.

53.    In addition, Defendants documented that Plaintiff was held overnight because of his refusal to take a breath test (pursuant to Vehicle and Traffic Law 1194(1)(b), yet that statute does not apply incidents involving an e-bike under the circumstances alleged by Defendants.  As such, Defendants admitted to unlawfully detaining Plaintiff overnight based on improper allegations of a refusal to consent to a test that Plaintiff was not legally mandated to consent to.

54.     Moreover, no reasonable officer in Defendants' position would have believed there was valid probable cause for the arrest and continued imprisonment of Plaintiff under the circumstances known at the time.

55.     As a direct and proximate result of Defendants' false arrest and imprisonment of Plaintiff, Plaintiff was deprived of his liberty and sustained physical and emotional injuries. He suffered indignity, humiliation, and fear associated with being wrongfully arrested, in addition to the physical injuries caused by the manner of his arrest and detention. Defendant County of Oneida is vicariously liable for the acts of its officers in falsely arresting and imprisoning Plaintiff, as these acts were undertaken within the scope of their employment.  Plaintiff is entitled to compensatory damages for his loss of freedom, pain and suffering, reputational harm, and other damages resulting from the unlawful arrest and detention. He also seeks any appropriate punitive damages against the individual Defendants, given the wanton and retaliatory nature of their misconduct.

56.     Because of the aforesaid, Plaintiff has been damaged and he is entitled to compensatory and punitive damages in a sum to be determined at trial.

## IX.     FOURTH CAUSE OF ACTION: FAILURE TO INTERVENE (42 U.S.C. §1983 AND THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION)

57.     Plaintiff repeats and realleges each and every preceding paragraph as if fully set forth herein.

58.     The constitutional injuries and abuses described above were observed by other law enforcement officers who were present at the scene(s) of the incident, including but not limited to one or more deputies in addition to Defendants Woods and Eilers. These officers were in a position

to witness the use of excessive force and other unlawful conduct against Plaintiff and had a reasonable opportunity to intervene to prevent the ongoing violation of Plaintiff's rights.

59.     Despite having the duty and ability to intervene, the Defendant officers who observed the misconduct failed to take any reasonable steps to stop or limit the excessive force being used or otherwise protect Plaintiff from harm.  Upon information and belief, multiple deputies were present when Plaintiff was thrown to the ground and rendered unconscious during the roadside encounter, and multiple deputies were in the holding cell during Defendant Woods's assaultive conduct, yet none of these officers interceded or otherwise come to Plaintiff's aid. Instead, the non-intervening Defendants stood by and allowed the unlawful mistreatment to continue.  Furthermore, said observers failed to render appropriate or adequate medical attention despite clear injury resulting from the misconduct referenced herein.

60.     The failure of these Defendant deputies to intervene and prevent the violation of Plaintiff's constitutional rights makes them liable under 42 U.S.C. § 1983.  At all relevant times, the Defendants who failed to act were acting under color of state law and had fair warning that their inaction in the face of a fellow officer's blatant abuse of power was unlawful.  Their omission was a proximate cause of the continued harm inflicted on Plaintiff.

61.     As a direct and proximate result of Defendants' failure to intervene, Plaintiff suffered additional pain and injuries that could have been avoided. The inaction of the observing officers allowed excessive force and harm to be inflicted when it could have been stopped, thereby compounding Plaintiff's physical injuries and emotional distress. Defendants' violations of Plaintiff's rights entitle Plaintiff to compensatory damages, and the egregious nature of the misconduct and knowing acquiescence therein justifies an award of punitive damages against the responsible individual officers.

19

62.     Because of the aforesaid, Plaintiff has been damaged and he is entitled to compensatory damages in a sum to be determined at trial, punitive damages and attorneys' fees pursuant to 42 U.S.C. §1988.

## X.    FIFTH CAUSE OF ACTION:  NEGLIGENCE (NEW YORK COMMON LAW)

63.     Plaintiff repeats and realleges each and every preceding paragraph as if fully set forth herein.

64.     At all relevant times, Defendants owed Plaintiff a duty to exercise due care in the execution of their police duties and in their treatment of him while he was in their custody. This duty of care included, among other things, the obligations to handle and detain Plaintiff in a safe and reasonable manner, to refrain from using unnecessary or excessive force, to attend to Plaintiff's obvious medical needs, and to generally act as reasonably prudent law enforcement officers would under similar circumstances, especially given Plaintiff's known disabilities and injuries.

65.     Defendants breached their duty of care to Plaintiff through a series of negligent acts and omissions. Without limiting the generality of the foregoing, Defendants were negligent in following ways in that they: used unreasonable force and tactics in stopping and detaining Plaintiff (when a reasonably careful officer would have employed a minimal and safe level of force, particularly for a non-violent traffic stop involving a disabled person); failed to properly stabilize or protect Plaintiff after he was injured and unconscious,  jostling and twisting his limp body in a manner that a reasonably prudent responder would know could worsen a spinal or head injury; failed to heed Plaintiff's statements about his physical limitations and disabilities; and neglected to

obtain timely medical care or even basic aid such for Plaintiff when a reasonable officer would have recognized the need for immediate medical attention.

66.     In the alternative to any intentional tort theory, Plaintiff pleads that the above-described conduct was careless, reckless, and negligent.  To the extent any Defendant claims their actions were not intentional, those actions still violated the standard of care owed to Plaintiff. The injuries sustained by Plaintiff were a foreseeable consequence of Defendants' failure to exercise due care (for example, forcibly slamming an already-injured person into a wall is foreseeably likely to cause further injury, and failing to secure medical help thereafter is foreseeably likely to cause prolonged suffering or complications).

67.     Defendant County of Oneida (including its Sheriff's Department) is vicariously liable for the negligence of its employees committed within the scope of their employment and in furtherance of their official duties.  Each of the above-described negligent acts by the individual Defendants occurred while they were acting as officers of the County and carrying out law enforcement functions.

68.     As a direct and proximate result of Defendants' negligence, Plaintiff suffered the injuries and damages previously described.  Plaintiff endured physical harm, pain and suffering, and aggravation of pre-existing medical conditions, as well as emotional distress and other damages. Plaintiff is entitled to recover full compensatory damages from Defendants for their negligence.

69.     Because of the aforesaid, Plaintiff has been damaged and he is entitled to compensatory and punitive damages in a sum to be determined at trial.

## XI.    SIXTH CAUSE OF ACTION:  DENIAL OF MEDICAL CARE (42 U.S.C. §1983 AND THE FOURTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION)

70.    Plaintiff repeats and realleges each and every preceding paragraph as if fully set forth herein.

71.    At all relevant times during Plaintiff's detention and custody, Defendants were aware of facts indicating that Plaintiff had serious medical needs and was in acute distress, yet they willfully and deliberately failed to provide or obtain timely medical assistance for him.  Although providing medical intervention subsequent to the initial encounter, a subsequent attack on Plaintiff resulted in additional and evident injuries that Defendants ignored.  Upon information and belief, Plaintiff explicitly requested medical attention, including pleading to be taken to a hospital due to intense neck and back pain, but his pleas were ignored or outright refused by Defendants for an unreasonable period.

72.    The Defendant deputies, acting under color of state law, demonstrated deliberate indifference to Plaintiff's serious medical needs.  Instead of promptly summoning medical help or transporting Plaintiff for urgent care when he was visibly injured, disoriented, and in pain, Defendants continued to handle him roughly and kept him confined without proper evaluation or treatment. They failed to render timely aid even though Plaintiff's need for medical care was obvious and known to them.  Defendants delayed obtaining appropriate medical evaluation and did nothing to alleviate his condition for an extended time while he suffered in custody.

73.    By failing to provide necessary and prompt medical care, Defendants violated Plaintiff's rights under the Fourteenth Amendment to the United States Constitution.  As a pretrial detainee or arrestee in Defendants' custody, Plaintiff was entitled to reasonable medical care and attention for serious health needs.  Defendants' conduct in ignoring Plaintiff's injuries and requests

was objectively unreasonable and amounted to deliberate indifference to a substantial risk of harm to Plaintiff's health. No reasonable officer in Defendants' position would have concluded that denying or delaying medical aid to an obviously injured detainee was lawful or appropriate.

74.    As a direct and proximate result of Defendants' denial of medical care, Plaintiff suffered unnecessary pain, exacerbation of his injuries, and extreme emotional distress. Defendants' indifference caused Plaintiff to endure prolonged agony (including intense neck and back pain and difficulty breathing due to his untreated injuries) and created a risk of lasting harm. Plaintiff was forced to later seek out medical treatment on his own for the injuries that went untreated while in Defendants' custody.  Plaintiff accordingly seeks compensatory damages for the harm caused by Defendants' unlawful conduct, as well as punitive damages against the individual Defendants to punish and deter such deliberate disregard for the rights and safety of detainees.

75.    Because of the aforesaid, Plaintiff has been damaged and he is entitled to compensatory damages in a sum to be determined at trial, punitive damages and attorneys' fees pursuant to 42 U.S.C. §1988.

## XII.    SEVENTH CAUSE OF ACTION: ASSAULT (NEW YORK COMMON LAW)

76.    Plaintiff repeats the assertions of the previous paragraphs as though fully stated herein.

77.    Plaintiff was subjected to an unwarranted threat of violence and reprisal by the Defendants who caused him to fear an imminent, non-consensual, harmful and offensive physical contact, as well as the use of unlawful legal process to injure Plaintiff.

78.     Defendants' actions caused Plaintiff anxiety, humiliation and other physical and emotional harms described above.

79.     By the actions described above, the individual Defendants deprived Plaintiff of his rights secured by the common law of the State of New York.

80.     Because of the aforesaid, Plaintiff has been damaged and he is entitled to compensatory and punitive damages in a sum to be determined at trial.

## XIII.    EIGHTH CAUSE OF ACTION: BATTERY (NEW YORK COMMON LAW)

81.     Plaintiff repeats the assertions of the previous paragraphs as though fully stated herein.

82.     Plaintiff was subjected to a battery by the Defendants who physically abused him and injured him without provocation and without legal justification.

83.     Defendants' actions caused Plaintiff physical injury, loss of bodily function, medical bills, loss of income, pain and suffering, anxiety and other emotional harms described above.

84.     By the actions described above, the individual Defendants deprived Plaintiff of his rights secured by the common law of the State of New York.

85.     Because of the aforesaid, Plaintiff has been damaged and he is entitled to compensatory and punitive damages in a sum to be determined at trial.

## XIV.    NINTH CAUSE OF ACTION: VIOLATION OF PLAINTIFF'S RIGHTS VIA RETALIATION FOR PROTECTED SPEECH (42 U.S.C. §1983 AND THE FIRST, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION)

86.    Plaintiff repeats and realleges each and every assertion set forth above as though fully stated herein.

87.    By the actions described above, Defendants deprived Plaintiff of his rights secured by the Constitution and laws of the United States in violation of 42 U.S.C. §1983 and the First Amendment as made applicable to the states via the Fourteenth Amendment, including protection from retaliation against the Plaintiff for engaging in protected speech.  While verbally protesting and challenging Defendants' unlawful law enforcement actions, Defendants intentionally, unlawfully and in retaliation thereto, utilized excessive force against Plaintiff, thereafter, placing him under arrest in direct response to his criticisms.  In doing so, Defendants denied Plaintiff the right to freedom of speech and expression, including the right to petition and verbally oppose police misconduct without retaliation by government agents.  In addition, Defendants unlawfully charged and arrested Plaintiff under inapplicable legal statutes to further subject him to more severe civil and legal penalties in direct retaliation to his protected criticism; namely, Obstruction of Governmental Administration in Violation of the Penal Law Section 195.05; Refusal to Take a Breath Test in violation of Vehicle and Traffic Law Section 1194(1)(b); Driving While Intoxicated in violation of Vehicle and Traffic Law § 1192(3); and, Failure to Comply with a Lawful Order in violation of Vehicle and Traffic Law Section 1102.  As such, Defendants retaliated against Plaintiff for the exercise of his First Amendment rights, in violation of the Constitution of the United States.

88.     Because of Defendants' retaliatory conduct, Plaintiff suffered damages including deprivation of liberty, physical injuries as described above, and severe emotional and dignitary harms. Plaintiff experienced mental anguish, fear, and humiliation stemming from being arrested and brutalized in reprisal for his speech, and he has suffered harm to his reputation and standing in the community as a result of Defendants' actions.

89.     Because of the aforesaid, Plaintiff has been damaged and he is entitled to compensatory damages in a sum to be determined at trial, punitive damages and attorneys' fees pursuant to 42 U.S.C. §1988.

## XV.    TENTH CAUSE OF ACTION:  DISCRIMINATION BASED ON DISABILITY (ARTICLE I, SECTION 11 OF THE NEW YORK CONSTITUTION; NEW YORK HUMAN RIGHTS LAW SECTION 296, CIVIL RIGHTS LAW SECTION 40-C; THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. SECTION 12132; THE REHABILITATION ACT, 29 U.S.C. § 794)

90.     Plaintiff repeats the assertions of the previous paragraphs as though fully stated herein.

91.     Plaintiff is a qualified individual with a disability.  At the time of the incident, Plaintiff suffered from physical impairments affecting his neck, back, and mobility which are conditions which substantially limit one or more major life activities and which were known or obvious to Defendants.  Plaintiff explicitly informed the Defendants of his disabled status during the encounter multiple times and the same was documented by Defendants.

92.     Plaintiff is an individual with disabilities as defined in Section 504, and Defendant County of Oneida (including its Sheriff's Department) is a program or activity receiving federal financial assistance, bringing it within the scope of the Rehabilitation Act's requirements. Under

26

Section 504, the County may not exclude or deny Plaintiff the benefits of its services, or otherwise subject Plaintiff to discrimination solely by reason of his disability.  The County's conduct, as described herein, breached this mandate. By failing to accommodate Plaintiff's known disabilities and instead injuring and mistreating him because of his disability, the County discriminated against Plaintiff solely on the basis of disability, in violation of the Rehabilitation Act. The result of this violation was that Plaintiff was denied the same safety, dignity, and treatment afforded to individuals without disabilities during his interaction with law enforcement.

93.     Plaintiff's treatment by Defendants also violated the New York State Human Rights Law, which prohibits discrimination on the basis of disability in the provision of public accommodations and governmental services.  Defendant County of Oneida and its Sheriff's Department are subject to § 296 as they provide services to the public.  By engaging in the acts set forth herein, including using excessive force against Plaintiff and denying him accommodations or medical care specifically in circumstances aggravated by his disabilities, Defendants treated Plaintiff less favorably because of his disability.  Defendants failed to provide reasonable accommodations to a known disabled person, such as adjusting their handling techniques or ensuring prompt medical attention, and they subjected him to hostile, abusive treatment that was closely connected to his physical condition. This conduct constitutes unlawful discrimination under New York Executive Law § 296.

94.     The New York State Constitution (including Article I, § 11, New York's Equal Protection Clause) guarantees that no person shall be denied the equal protection of the laws or be subjected to discrimination in civil rights because of physical disability.  The actions of Defendants, who are state actors, in targeting Plaintiff for abuse and failing to protect him or accommodate him due to his disabilities, violated Plaintiff's rights to equal protection and freedom

27

from discrimination under the state Constitution. In essence, Plaintiff was not afforded the same protection and consideration that would have been given to a similarly-situated person without a disability, and this disparate treatment by Defendants is forbidden by New York's fundamental law.

95.     As a direct and proximate result of Defendants' violations of the Rehabilitation Act, the New York Human Rights Law, and the New York State Constitution, Plaintiff has suffered injuries and damages as previously described. Plaintiff suffered physical injuries, pain and suffering, emotional distress, and other losses due to Defendants' disability-based discrimination and failure to accommodate. Plaintiff is entitled to all appropriate relief under these laws, including compensatory damages to redress his injuries and attorney fees. In addition, the Rehabilitation Act claim entitles to recover his reasonable attorneys' fees and costs. Plaintiff also seeks such other and further relief as the Court deems just and proper, including injunctive relief to prevent similar discrimination by Defendants in the future.

96.     Defendant County of Oneida, including its Sheriff's Department (collectively, the "County" or the public entity), is a public entity within the meaning of Title II of the Americans with Disabilities Act (ADA). The County, through its law enforcement and detention operations, provides services, programs, or activities to the general public, and at all relevant times received federal funds and was subject to the non-discrimination requirements of the ADA and the Rehabilitation Act.

97.     Title II of the ADA (42 U.S.C. § 12132) mandates that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. This includes law enforcement activities, such as police encounters, arrests, and

the provision of custodial care, which must be conducted in a manner that does not discriminate against individuals with disabilities.

98.    The County of Oneida, through the actions and omissions of its deputies, violated Plaintiff's rights under the ADA by failing to reasonably accommodate his disabilities during the course of the police encounter and detention. Plaintiff was denied the benefits of the County's services and was treated in a hostile, unsafe manner in spite of his disabilities. For example, knowing of Plaintiff's spinal and mobility limitations and observing his injury and distress related thereto, Defendants continued to use aggressive and unnecessary force in interactions with the Plaintiff, thereat failing to reasonably accommodate Plaintiff's disability in the process. They also failed to adjust their handling of Plaintiff such as by providing care, calm communication, or physical support in light of his evident medical vulnerabilities.

99.    Defendant County, by and through its officers, failed to provide reasonable accommodations to Plaintiff. Rather than accommodating his disability by de-escalating their use of force, summoning medical personnel, or modifying their arrest procedures once it was clear he was injured and physically compromised, Defendants persisted in tactics that exacerbated Plaintiff's disabilities. They treated Plaintiff in an abusive manner specifically because of, or with deliberate indifference to, his disability.

100.    The aforementioned conduct of the County and its deputies constitutes discrimination against Plaintiff on the basis of disability, in violation of Title II of the ADA. The violation was intentional and/or done with deliberate indifference to the strong likelihood of violating Plaintiff's federally protected rights. Defendant County, as a result, is liable for all injuries and losses suffered by Plaintiff due to this ADA violation.

101.    As a direct and proximate result of Defendant's ADA violations, Plaintiff suffered damages including physical injuries, extreme pain and suffering, mental anguish, humiliation, and other compensable losses. Pursuant to 42 U.S.C. § 12133, Plaintiff is entitled to recover compensatory damages from the County for the injuries caused by its discrimination. Plaintiff also seeks recovery of his reasonable attorneys' fees and costs, as provided by law, and injunctive or declaratory relief as appropriate to ensure the County's compliance with the ADA going forward.

102.    Defendants, knowing the Plaintiff to be a disabled person, engaged in discriminatory conduct against Plaintiff that was intentional, negligent, and/or reckless by effectuating overt uses of excessive physical force in the areas of the Plaintiff's body which Defendants knew to be injured and contributing factors to his physical disabilities all while provide County services.

103.    Plaintiff explained numerous times that he was disabled, that his neck and back were damaged by surgical intervention, and that he could not move in particular ways as a result, yet officer disregarded these facts and engaged with Plaintiff in manners and against his physical person in the areas of his disability while performing County services for the Plaintiff.

104.    Defendants' actions caused Plaintiff physical injury, pain and suffering, anxiety and other emotional harm including severe emotional distress, nightmares, anxiety and post-traumatic stress disorder, and were geared at causing pain and fear by targeting the Plaintiff in ways in which he was physically compromised, thereby discriminating against Plaintiff because of his physical disabilities in the course of County duties.

105.    Plaintiff invokes New York Constitution in its broader capacity in protecting disabled individuals beyond those statutory claims covered by Americans with Disabilities Act where the statutory protections therein fall short of creating remedy or redress for Plaintiff related

to the violations identified here, and in the alternative, where said statutory protection is otherwise inapplicable to the actions perpetuated against the Plaintiff.

106.    By the actions described above, the individual Defendants deprived Plaintiff of his rights secured by the New York Constitution, New York State Statute, the United States Constitution, the Americans with Disabilities Act, and The Rehabilitation Act.

107.    Because of the aforesaid, Plaintiff has been damaged and he is entitled to compensatory damages in a sum to be determined at trial as well as attorneys' fees pursuant to 42 U.S.C. §1988, New York State Law, the ADA and the RA.

## XVI.    ELEVENTH CAUSE OF ACTION:  MALICIOUS ABUSE OF PROCESS AND MALICIOUS PROSECUTION (NEW YORK COMMON LAW AND 42 U.S.C. §1983 AND THE FOURTH, FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION)

108.    Plaintiff repeats the assertions of the previous paragraphs as though fully stated herein.

109.    By the actions described above, Defendants misused and perverted the criminal justice process against Plaintiff for an unlawful purpose.  Defendants initiated and pursued criminal charges against Plaintiff without probable cause and with actual malice, not to bring Plaintiff to justice for any legitimate offense, but to cover up Defendants' own misconduct and retaliate against Plaintiff.

110.    First, the arrest and charges against Plaintiff were pretextual and initiated for ulterior motives, as evidenced by Defendants' statements and conduct indicating that Plaintiff was

being charged only because he had challenged their authority. Moreover, the baseless criminal charges initiated by Defendants were ultimately terminated in Plaintiff's favor.

111.   Second, Defendants charged Plaintiff with Vehicle and Traffic Law sections involving refusal to submit to a breath test and operating a motor vehicle while intoxicated are facially invalid against the allegations posed against Mr. Worden. Moreover, it is those same charges that the Defendants documented as the justification for continuing to hold the Plaintiff in the lockup overnight.

112.   Third, the refusal and driving while intoxicated allegations also were directed to civil penalties, including immediate license suspension, DMV penalties, and the need for additional hearings and litigation with the DMV which the Plaintiff was only subject to because of the illegal allegations brought by the Defendants. Charging Plaintiff with the same was a perversion of the criminal justice and DMV system done as punishment or retribution for his dissent regarding Defendants improper actions.

113.   The actions by Defendants were done with intent to harm the Plaintiff and without excuse or justification.

114.   As such, Defendants' conduct constituted a malicious abuse of process and malicious prosecution under the laws of the State of New York. Defendants, acting with malice and without legal cause, exploited the legal process to Plaintiff's detriment and are liable for this tortious conduct. In addition, the charges were eventually dismissed in favor of the Plaintiff.

115.   By reason of Defendants' malicious abuse of process and malicious prosecution, Plaintiff suffered significant damages, including loss of liberty, emotional distress, and reputational harm. Plaintiff was wrongfully subjected to the ordeal of a criminal prosecution, detained and forced to defend against baseless charges, and suffered attendant mental anguish,

humiliation, and damage to his reputation in the community as a result of being falsely accused and treated as a criminal.  Plaintiff was also subject to a driver's license suspension and additional civil hearings and process resulting from the malevolent conduct of the Defendants.

116.    Defendants' actions caused Plaintiff physical injury, pain and suffering, anxiety and other emotional harm including severe emotional distress, nightmares, anxiety and post-traumatic stress disorder, and were geared at penalizing Plaintiff's Constitutionally protected speech and undermined Plaintiff's Due Process Rights:   such actions were an intentional criminal abuse of process as well as malicious prosecution in furtherance of reprisal and illegal purposes.

117.    Because of the aforesaid, Plaintiff has been damaged and he is entitled to compensatory damages in a sum to be determined at trial, punitive damages and attorneys' fees pursuant to 42 U.S.C. §1988.

## XVII.    TWELFTH CAUSE OF ACTION: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (NEW YORK COMMON LAW)

118.    Plaintiff repeats the assertions of the previous paragraphs as though fully stated herein.

119.    Plaintiff was subjected to physical and emotional abuse by the Defendants who injured him, including but not limited to engaging in a course of conduct without a legal justification, causing Plaintiff to fear public interaction with law enforcement or to be in public for fear of reprisal from the Defendants.  The Defendants have law enforcement authority and utilized the same to physically, emotionally, and by legal process, abuse the Plaintiff without any negative consequences.  These actions have cause fear in Plaintiff that Defendants that can inappropriately

engage in any way at any time, tackling, choking, hitting, detaining, suspending licenses, and causing serious legal implications for Plaintiff without any legal justification.

120.    Defendants actions were extreme and outrageous and a result of Defendants' intentional conduct in this regard, directly causing extreme emotional distress to Plaintiff.

121.    Defendants' actions caused Plaintiff physical injury, pain and suffering, anxiety and other emotional harm including severe emotional distress, nightmares, anxiety and post-traumatic stress disorder.

122.    By the actions described above, the individual Defendants deprived Plaintiff of his rights secured by the common law of the State of New York.

123.    Because of the aforesaid, Plaintiff has been damaged and he is entitled to compensatory and punitive damages in a sum to be determined at trial.

## XVIII.    THIRTEENTH CAUSE OF ACTION:  MUNICIPAL LIABILITY PURSUANT TO MONELL AND IN THE ALTERNATIVE, FOR FAILURE TO TRAIN OR SUPERVISE (42 U.S.C. § 1983)

124.    Plaintiff repeats and realleges the allegations of the previous paragraphs as though fully stated herein.

125.    Defendant County of Oneida (inclusive of the Oneida County Sheriff's Department) owed a duty to the public, including Plaintiff, to exercise reasonable care in the hiring, training, supervision, and retention of its law enforcement officers. This duty required the County to ensure that it employed deputies who were fit for duty and to adequately train and supervise those deputies in the lawful and proper performance of their jobs, particularly with respect to the use of

force, the handling of individuals with known medical conditions or disabilities, the provision of medical care to persons in custody, and the respect for citizens' constitutional rights.

126.    The County breached its aforesaid duties by negligently hiring and/or retaining deputies who were unfit, by failing to adequately train its deputies, and by failing to properly supervise and discipline its deputies, thereby allowing the misconduct described in this Complaint to occur.  Upon information and belief, prior to the incident with Plaintiff, the County knew or should have known of patterns of misconduct or propensities for violence and rule-breaking by Defendant deputies or by Sheriff's Department staff generally, yet the County failed to take necessary precautions through better hiring standards, training programs, or supervision protocols. The Sheriff's Department's training and oversight were so deficient that the deputies in this case felt free to engage in obvious excessive force, to ignore an arrestee's serious injuries and disabilities, and to violate clearly established rights in the presence of other officers:  conduct that would not have occurred had the County implemented proper training, supervision, and discipline.

127.    Further, the County's failure to institute appropriate training and policies related to de-escalation techniques, accommodating and safely handling people with disabilities, and on the duty to obtain medical care for injured detainees, directly led to the harm suffered by Plaintiff. The lack of adequate supervision and an apparent tolerance for officer misconduct were substantial factors in causing the individual Defendants to believe they could act with impunity.  In this way, the County's negligence in management and oversight was a proximate cause of the violation of Plaintiff's rights and the injuries he sustained.

128.    Defendant County of Oneida is therefore directly liable to Plaintiff for its negligent hiring, training, supervision, and retention of the deputies involved.  The County's negligence created the conditions that allowed Plaintiff's injury and rights deprivations to occur, and

Plaintiff's resulting damages were a foreseeable consequence of the County's failures.  As a result, Plaintiff suffered the physical and emotional injuries described herein.  Plaintiff seeks to recover all damages proximately caused by the County's negligence, including compensation for his pain, suffering, medical expenses, and other losses.  This cause of action is pleaded in the alternative to Plaintiff's federal Monell claims, to the extent such may be asserted, and does not waive any federal claim.

129.    Defendant County of Oneida, through its Police Department and other agencies, developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of individuals, including the Plaintiff, which caused the violations of Plaintiff's rights alleged herein.  To the extent that no formal policy or practice can be established, Plaintiff alleges in the alternative that the constitutional violations were proximately caused by the County's deliberate indifference in failing to train or supervise its police officers in the proper exercise of authority, constitutional boundaries during arrests, interaction with people with disabilities, medical treatment for people with disabilities, reasonable accommodations, and the improper use of legal process, among other things.

130.    The unconstitutional actions of the individual Defendants were taken pursuant to, and were caused by, policies, practices, customs, and usages of the County of Oneida, including but not limited to:

> A.  A pattern or informal policy of harassment of individuals who speak out during improper police confrontation through the use of force, abuse of process, malicious prosecution, and administrative retaliation, including abuse of DMV mechanisms;

B.  A failure to adequately train, supervise, and discipline police officers regarding constitutional protections, including Fourth, Eighth, and Fourteenth Amendment rights, as well as the New York Constitution;

C.  A failure to implement or enforce proper policies prohibiting abuse of process, retaliatory enforcement, and misuse of force;

D. Failure to adequately train on the appropriate treatment and reasonable accommodations for people with disabilities during and after the arrest process, during processing, and during detention.

131.    These customs, policies, and failures of supervision and training demonstrate deliberate indifference to the rights of citizens and were a functional force behind the constitutional violations suffered by Plaintiff.

132.    The ongoing and repeated violations committed by multiple Oneida County Deputies and employees indicate that the violations were not isolated incidents and reflect the standard operating procedure of the County when engaging disabled or outspoken individuals.

133.    As a direct and proximate result of the above-described policies and practices, Plaintiff suffered the constitutional deprivations and resulting injuries described herein.

134.    Plaintiff is therefore entitled to compensatory and punitive damages, as well as reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

**WHEREFORE,** Plaintiff demands judgment against Defendants in the First through Thirteenth Causes of Action for compensatory damages in a sum to be determined at trial on all causes of action, punitive damages and attorneys' fees pursuant to 42 U.S.C. §1988, together with costs, disbursements and interest; a trial by jury of all issues involved in this complaint; and for

such other and further relief as this Court may deem just and proper under the circumstances.

Dated:  Ilion, NY
          September 5, 2025

                                        Yours, etc.;


                                        *Cory Zennamo*
                                        By: Cory Zennamo, Esq.
                                        Zennamo Litigation & Advocacy, PLLC
                                        47 West Street, Ilion, NY 13357
                                        Phone:  (315)520-8838
                                        Info@zennamo.legal
                                        NDNY Bar Roll:  702282